

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| ROBERT C. LADUE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:06-CV-350 |
| | § | |
| LAFRANCE CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**O R D E R**

The following motions are pending before the court:

1. Plaintiff / Counter-Defendant Robert C. LaDue's Motion to Modify Temporary Restraining Order and Appoint Special Master and Memorandum of Law in Support Thereof (docket entry #38); and

2. Defendant-Counterclaim Plaintiff's Motion for Contempt Against Plaintiff-Counterclaim Defendant (docket entry #41).

The above-referenced motions were each filed on the afternoon of Friday, September 1, 2006. Shortly after the motions were filed, the court conducted an emergency teleconference on September 1, 2006 at the urging of counsel for LaFrance Corporation in order to hear each party's response to the other party's motion. Having considered the arguments of counsel and the relevant case law, the court reaches the following conclusions:

**BACKGROUND**

On August 29, 2006, the court heard argument from counsel on Defendant LaFrance Corporation's ("LaFrance") Motion for Temporary Restraining Order and / or Preliminary Injunction against Plaintiff Robert Craig LaDue ("LaDue"). At the conclusion of the hearing, the court entered

a temporary restraining order ("TRO"), the terms of which were reviewed and agreed upon by the parties, and which are restated, in part, as follows:

> 2. Not later than August 31, 2006, LaDue shall:
>
>> a. Provide LaFrance with access, for purposes of data imaging and evidence preservation, to any and all computers, and other electronic storage devices, known to him and within his control that contain copies of LaFrance's information. Once an image of LaDue's computers is taken by LaFrance's expert, LaFrance's expert shall delete all of LaFrance's information from LaDue's computers; and
>>
>> b. Return to LaFrance any and all information or materials belonging to LaFrance in his possession or under his control, in any format whatsoever (paper, electronic, hardware, or other) and provide a certification that he has no other materials in his possession or under his control. This includes all customer files; customer contact information; order history information; shipping information; the "top 40% list"; product graphics design; pricing information; customer preferences; and information contained on LaDue's computer hard drive or copied or printed therefrom.

Subsequent to the hearing, the parties apparently entered into an agreement whereby LaDue was to perform his obligations under 2(a) and 2(b) of the TRO at 2:00 p.m. on September 1, 2006. Sometime prior to that time, however, LaDue's newly hired counsel asserted LaDue's Fifth Amendment privilege. Accordingly, LaDue did not perform his obligations under the TRO. LaDue then filed his motion to modify the TRO and to appoint a special master. LaFrance subsequently filed its motion for contempt. The court will examine each motion in turn.

## LADUE'S MOTION TO MODIFY

LaDue requests that the court modify the TRO based on the following grounds:

1. The manner of production for those items listed in 2(a) and 2(b) is prejudicial to LaDue; and

2. The term the "top 40% list" is vague and requires clarification.

The court denies LaDue's request on these grounds. At the TRO hearing, the court reviewed the terms of the TRO with the parties at length. LaDue's counsel was afforded every opportunity to express any concerns he had with the terms of the TRO. In fact, LaDue's counsel expressed several concerns relating to the manner in which the items in question were to be disclosed. Further, the court inquired of LaFrance as to the meaning of the "top 40% list." Hence, both of these issues were raised and resolved at the TRO hearing. The court, therefore, is not inclined to revisit issues which were already addressed at the TRO hearing. Accordingly, the court **DENIES** LaDue's request for a modification of the TRO based on the above-referenced grounds.

LaDue, however, also raises (for the first time) the Fifth Amendment privilege against self-incrimination. In its counterclaims, LaFrance seeks to recover damages from LaDue under a number of theories. One of those theories of recovery includes LaDue's alleged violation of 18 U.S.C. § 1030, the Computer Fraud and Abuse Act. LaDue now argues that he should not be compelled to provide directly to LaFrance information that could be used as evidence against him in any criminal investigation that might arise. Although LaDue should have asserted his Fifth Amendment privilege at the TRO hearing, the court will address this issue now.

"The fifth amendment provides that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . .'" *Vincent T. Garza Contracting Services, Inc. v. Harlandale I.S.D. Public Facilities Corp.*, 2004 WL 1921010, *2 (W.D. Tex. 2004), quoting U.S. CONST. AMEND. V. "This privilege against compulsory self-incrimination 'can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory . . . .'" *Id.*, quoting *Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). "A witness may properly invoke the privilege when he 'reasonably apprehends a risk of self-incrimination, . . .

though no criminal charges are pending against him, . . . and even if the risk of prosecution is remote.'" *Id.*, quoting *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1087, n. 5 (5th Cir. 1979) (citations omitted in the original). "First, the court must determine whether answers to the questions might tend to reveal that the witness has engaged in criminal activities." *Id*. "If the answers could not be incriminatory, the witness must answer." *Id.*, citing *Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972). "If answering the questions might incriminate the witness, the court must next ask whether there is a risk, even a remote risk, that the witness will be prosecuted for the criminal activities that his testimony might touch on." *Id.*

### 1. COULD THE PRODUCTION REFERENCED IN SECTION 2 (a) AND SECTION 2(b) OF THE TRO BE INCRIMINATORY?

LaDue argues that the items required to be disclosed in Section 2 of the TRO could be incriminatory in nature. Accordingly, LaDue asserts that such disclosure violates the rights afforded to him under the Fifth Amendment. LaDue is guided by the Fifth Circuit opinion in *Natural Gas Pipeline Company of America v. Energy Gathering, Inc.* which provides that "[t]he privilege applies to documents as well as to testimony. Upon valid invocation of the privilege, an individual's potentially incriminating papers are protected from production." 86 F.3d 464, 468 (5th Cir. 1996).

Although LaDue did not engage in the following analysis, the court must determine if LaDue's invocation of the privilege was valid. "[T]he Fifth Amendment protects the person asserting the privilege only from *compelled* self-incrimination." *United States v. Doe*, 465 U.S. 605, 610, 104 S.Ct. 1237, 1241, 79 L.Ed.2d 552 (1984). "A subpoena that demands production of documents 'does not compel oral testimony; nor would it ordinarily compel the [person] to restate,

repeat, or affirm the truth of the contents of the documents sought.'" *Id*. at 610-611, 104 S.Ct. at 1241, quoting *Fisher v. United States*, 425 U.S. 391, 409, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976). "'[T]he Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the [person], for the privilege protects a person only against being incriminated by his own compelled testimonial communications.'" *Id*. at 611, 104 S.Ct. at 1241 (citation omitted). "More relevant to this case is the settled proposition that a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege." *United States v. Hubbell*, 530 U.S. 27, 35-36, 120 S.Ct. 2037, 2043, 147 L.Ed.2d 24 (2000).

Here, LaDue does not contend that anything contained on his computer or other memory storage device was created involuntarily or that the TRO would force him to restate, repeat, or affirm the truth of their contents. *See Doe*, *supra*. Because the images contained on LaDue's computer or other memory storage device were voluntarily prepared prior to the issuance of the TRO, they cannot be said to contain compelled testimonial evidence. *See Hubbell*, 530 U.S. at 36, 120 S.Ct. at 2043. "The fact that the records are in [LaDue's] possession is irrelevant to the determination of whether the creation of the records was compelled." *Doe*, 465 U.S. at 612, 104 S.Ct. at 1242. Therefore, the court concludes that the *contents* of LaDue's computer images are not privileged. *See id*.

However, the court's analysis does not end at this juncture. "Although the contents of a document may not be privileged, the act of producing the document may be." *Id*. (citation omitted). The TRO at issue "compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect." *Id*. "'[T]he act of production' itself may implicitly

communicate 'statements of fact.'" *Hubbell*, 530 U.S. at 36, 120 S.Ct. at 2043. "By 'producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic.'" *Id*. "Moreover, . . . when the custodian of documents responds to a subpoena, he may be compelled to take the witness stand and answer questions designed to determine whether he has produced everything demanded by the subpoena." *Id*. at 37, 120 S.Ct. at 2043-2044. "The answers to those questions, as well as the act of production itself, may certainly communicate information about the existence, custody, and authenticity of the documents." *Id*. at 37, 120 S.Ct. at 2044. "Compelled testimony that communicates information that may 'lead to incriminating evidence' is privileged even if the information itself is not inculpatory." *Id*. at 38, 120 S.Ct. at 2044 (citation omitted).

Here, the court finds that the act of producing the images from LaDue's computer and any other memory device is privileged. The act of production requires LaDue to admit that the images existed on his computer (or any other memory device) and that the same were in his possession and control. Additionally, the terms of the TRO require LaDue to provide a certification that he has no other materials in his possession or under his control that belong to LaFrance. The certification certainly communicates information about the existence and custody of the documents. Accordingly, although the court concludes that the contents of LaDue's computer images are not privileged, the act of producing them is. As such, LaDue's invocation of his Fifth Amendment privilege is valid.

### 2. IS THERE A RISK THAT LADUE COULD BE PROSECUTED?

The court finds that the potential exists that LaDue could be prosecuted under 18 U.S.C. § 1030. Accordingly, the court finds that LaDue has properly invoked his Fifth Amendment privilege against self-incrimination.

## LADUE'S MOTION TO APPOINT A SPECIAL MASTER

LaDue proposed that a special master should be appointed if the court determined that he had properly invoked his Fifth Amendment privilege. The court agrees that a special master should be appointed at this time. LaDue proposed that Homer B. Reynolds, III should be appointed as the special master. It appears to the court that Mr. Reynolds is qualified for the appointment. However, LaFrance opposed the appointment of Mr. Reynolds as the special master because Mr. Reynolds is an attorney, not a computer expert. LaDue, however, assured the court during the teleconference that Mr. Reynolds engages the assistance of computer experts. In an effort to expeditiously accomplish the terms of 2(a) and 2(b) of the TRO, the court hereby **APPOINTS** Homer B. Reynolds, III as the special master in this case. Not later than 5:00 p.m. on September 6, 2006, LaDue shall provide to Mr. Reynolds all computers, electronic storage devices, electronic data and hardware (including information contained on LaDue's computer hard drive), known to him and within his control, that contain copies of LaFrance's information. Upon receiving the same, Mr. Reynolds shall contact the parties to select a mutually agreeable computer expert. If the parties cannot agree upon a computer expert, Mr. Reynolds shall select one. Mr. Reynolds shall ensure that provision 2(a) of the TRO is complied with by October 10, 2006.

Additionally, Mr. Reynolds shall possess, preserve and maintain all of LaDue's computers, electronic storage devices, electronic data and hardware (including information contained on LaDue's computer hard drive). Mr. Reynolds shall file with the court, under seal, a list of all of LaDue's computers, electronic storage devices, electronic data and hardware (including information contained on LaDue's computer hard drive) that was provided to him by LaDue. Further, Mr. Reynolds shall file a sealed written report with the court on the tenth day of each month, describing

the activities which have occurred in this case. The costs of the special master shall be borne equally by the parties.

### LAFRANCE'S MOTION FOR CONTEMPT

Section 2(b) of the TRO required LaDue to return to LaFrance all information and materials belonging to LaFrance. Much of the information ordered to be returned is not covered by the Fifth Amendment privilege, because the privilege only arises from LaFrance's counterclaim under the Computer Fraud and Abuse Act. Accordingly, LaDue was required to return the same to LaFrance by 2:00 p.m. on September 1, 2006. LaDue's counsel acknowledged this fact during the teleconference. Because LaDue failed to comply with the terms of the TRO as stated herein, the court finds that LaDue is in contempt of the court's TRO. Accordingly, the court **GRANTS** LaFrance's motion for contempt, but only with respect to the requested attorneys' fees and expert's fees and costs. As agreed by the parties during the teleconference, LaDue must deliver to LaFrance's courier all documents referenced in section 2(b) of the TRO that are not protected by the Fifth Amendment privilege by 4:30 p.m. on Tuesday, September 5, 2006 at the Law Offices of Dan E. Martens. Finally, LaFrance shall provide to the court by Tuesday, September 12, 2006 an itemization of its attorneys' fees and costs which were expended in the prosecution of its motion for contempt and the fees and costs charged to LaFrance by its computer expert for his attendance at the office of LaFrance's counsel on September 1, 2006. LaDue shall have until Tuesday, September 19, 2006 to file his response. Thereafter, the court will determine the appropriate dollar amount that LaDue must pay to reimburse LaFrance.

### CONCLUSION

Based on the foregoing, Plaintiff / Counter-Defendant Robert C. LaDue's Motion to Modify

Temporary Restraining Order and Appoint Special Master and Memorandum of Law in Support Thereof (docket entry #38) is **GRANTED IN PART**.  Defendant-Counterclaim Plaintiff's Motion for Contempt Against Plaintiff-Counterclaim Defendant (docket entry #41) is **GRANTED IN PART**.

IT IS SO ORDERED.

**SIGNED this the 5th day of September, 2006.**

*/s/ Richard A. Schell*
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE